UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **MICHAEL KOTSKI ET AL.** | **CASE NO. 2:19-CV-00967** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **MATTHEW HARTER ET AL.** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 14] filed by defendants Matthew Harter and Valiant Global Defense Services. Defendants seek dismissal of all claims against them on the grounds of the discretionary immunity exception to the Federal Tort Claims Act and an assertion that defendant Harter is a federal employee. Plaintiffs Michael and Jody Kotski oppose the motion. Doc. 17.

### I.
### BACKGROUND

This suit arises from injuries suffered by plaintiff Michael Kotski in a car accident that occurred early in the morning of June 28, 2018. Doc. 1, att. 1, p. 2; doc. 14, att. 10, pp. 7–8. Kotski is a soldier in the United States Army and was stationed at Fort Polk in Vernon Parish, Louisiana. Doc. 1, att. 1, p. 2. At that time defendant Valiant Global Defense Services ("Valiant") contracted with the United States Department of Defense to produce Mission Rehearsal Exercises ("MREs") for the Joint Readiness Training Center ("JRTC") at Fort Polk. Doc. 14, att. 1, p. 1; *see* doc. 14, att. 2. There Valiant employed defendant

Matthew Harter as an electronics technician, in which capacity he also participated in staging the MREs. Doc. 14, att. 6, pp. 1–2.

On June 28, 2018, Harter was on a 6:00 pm to 6:00 am shift, participating as a role player in an MRE with the Fourth Armored Division. *Id.* In this capacity he was playing a taxi driver and was driving a vehicle owned by Valiant down Louisiana Highway 489, outside Fort Polk, around 5:20 am. *Id.* Kotski was standing near a convoy of Army vehicles parked along this road. *Id.* When Harter attempted to drive around the convoy, he struck Kotski with his vehicle and injured him. *Id.* Kotski and his wife filed suit on behalf of themselves and their minor children in the 30th Judicial District Court, raising claims of negligence against Harter and Valiant. Doc. 1, att. 1, pp. 1–6. Defendants then removed the suit to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, on the assertion that plaintiffs' claims arose under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*

Defendants now move for summary judgment, arguing (1) that plaintiffs' claims are barred by the *Feres* doctrine, as applied to government contractors in *Bynum v. FMC Corp.*, 770 F.2d 556 (5th Cir. 1985); (2) that defendants are immune under the discretionary function exception to the FTCA; and (3) that the claims against Harter should likewise be dismissed because he is a government employee. Doc. 14, att. 9. Plaintiffs oppose the motion on all bases. Doc. 17.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

### A. *Government Contractor Immunity*

The FTCA provides a waiver of the government's sovereign immunity, allowing a plaintiff to pursue tort actions against the government "subject to strict limitations." *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 252 (5th Cir. 2006). One such limitation is the *Feres* doctrine, which provides that the government is not liable for injuries to servicemembers that "arise out of or are in the course of activity incident to service." *Regan v. Starcraft Marine, LLC*, 524 F.3d 627, 633 (5th Cir. 2009) (quoting *Feres v. United States*, 340 U.S. 135, 146 (1950)). In *Bynum*, supra, the Fifth Circuit extended this immunity to a government contractor in a products liability suit so long as the contractor could show that (1) the government was immune under the *Feres* doctrine; (2) the government established reasonably precise specifications for the allegedly defective military equipment and the equipment conformed to those specifications; and (3) the military contractor warned the government about errors in the specifications or dangers involved in the use of the product that were known to the contractor but not the government. 770 F.2d at 574–75.

Soon thereafter, the Supreme Court recognized a "government contractor defense" to negligence claims in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). Although *Boyle* also involved a military contractor, the Court specifically rejected *Feres* as a basis for the defendant's immunity and instead focused on the discretionary function exception to the FTCA. *Id.* at 2517. The Court then held that a military contractor was likewise

immune from state law products liability claims so long as the second and third elements of the *Bynum* test were satisfied. *Id.* at 2518. Accordingly, the defendants' arguments on immunity under *Bynum* and the discretionary function exception are merged into a single government contractor immunity claim under the test set forth in *Boyle*. *See, e.g.*, *Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1479 (5th Cir. 1989).

Although government contractor immunity is still most commonly asserted by military equipment contractors, numerous courts have held that it may apply to service contractors as well. *Kadan v. Am. Contractors Ins. Co.*, 2008 WL 5137259, at *2 (E.D. La. Dec. 5, 2008) (collecting cases). To prevail, the contractor must show that the government, in its discretion, approved reasonably precise specifications and supervised and controlled implementation of those specifications. *In re World Trade Ctr. Disaster Site Litig.*, 456 F.Supp.2d 520, 562–63 (S.D.N.Y. 2006). "A rubber stamp is not a discretionary function," and so the contractor must show that the review was sufficiently thorough in order to claim derivative immunity. *Trevino*, 865 F.2d at 1480.

Defendants assert that immunity attaches to the Kotskis' claims because the JRTC "supervise[d], control[led], and direct[ed] virtually every aspect of Valiant's contract performance" through the planning and staging of MREs. Doc. 14, att. 9, p. 6. Plaintiffs maintain, however, that derivate immunity cannot attach because this case centers on an accident for which discretionary function immunity would not apply if the government's own employee were driving the car.

Plaintiffs rely on *Kadan*, supra, where Judge Barbier of the Eastern District of Louisiana denied defendants' motion to dismiss on the basis of government contractor

5

immunity. 2008 WL 5137259 at *1–*2. There the defendant contractor had been conducting debris cleanup under a contract with the U.S. Army Corps of Engineers. The contract identified procedures that the contractor should follow in this operation and the USACE monitored the contractor's work in the field and through daily briefings. *Id.* at *1. Judge Barbier found that the contract provided no basis for derivative immunity from a car accident that occurred when one of defendant's employees rear-ended plaintiffs, however, noting that the government would not be able to claim immunity for such an accident if its own employee were driving the car. *Id.* He further observed:

> Additionally, the very purpose of the government contractor defense is to provide immunity for a contractor when it is actually the government who is at fault and would be liable if not for its immunity. See *Trevino,* 865 F.2d at 1478. There can be no argument in this case that the government is at fault for this car accident. The government did not instruct [defendant] as part of its contractual relationship to cause a car accident with the plaintiffs. The contract between [defendant] and the USACE related to debris removal and set out specific instructions for achieving that task. The government provided no instructions and no supervision related to a car accident.

*Id.* at *2.[1]

Harter's driving, on the other hand, appears more closely related to Valiant's work under its federal contract and therefore potentially within the scope of government contractor immunity if the conditions of the *Boyle* test are satisfied. Defendants have shown that Harter was on duty when the accident occurred and that he was operating a Valiant

---

[1] Defendants maintain that *Kadan* is inapplicable because it did not involve a military contractor. Doc. 19, pp. 2–3. They assert that "the *Feres* and *Boyle* doctrines bar [plaintiffs'] claims against the government and government contractors" and that under a *Bynum* analysis, the general degree of control exercised by the JRTC with respect to MREs is sufficient for immunity to attach. *Id.* at 2–4. However, as explained in *Trevino,* supra, the basis of government contractor immunity post-*Boyle* is not *Feres* but the discretionary function exception. *Kadan* relied on the discretionary function exception, as laid out in *Boyle* and *Trevino*, and provides a useful analog to this matter.

6

vehicle to play a taxi driver on that night's MRE. Defendants admit, however, that the MREs take place within a specifically designated area of Fort Polk known as "the box." Doc. 14, att. 10, ¶ 47. Highway 489, where the accident occurred, is a public route and Kotski provides in his affidavit that it is outside of the box. Doc. 17, att. 3, p. 1. Though defendants maintain that MREs sometimes require use of public routes surrounding the base, they also admit that Harter was on his way back to Valiant's headquarters to finish his shift when the accident occurred. Doc. 14, att. 10, ¶¶ 47, 49. Defendants assert that the degree of control exercised by the government over MREs generally, and over Valiant's hiring, provides a sufficient basis for immunity to attach. However, there is nothing in the record to show that the government, through the JRTC, approved specifications for how Valiant employees would drive on public roadways or the manner in which they would return to headquarters at the end of their shift. Accordingly, as with *Kadan*, defendants fail to establish a basis for government contractor immunity and the motion for summary judgment will be denied on this basis.

### B. *Government Employee Defense*

Defendants also maintain that the claims against Harter should be dismissed because he is a government employee and the proper party is therefore the United States. Doc. 14, att. 9, pp. 20–21.

"Under the FTCA, Congress has waived sovereign immunity and has granted consent for the government to be sued for acts committed by any 'employee of the Government while acting within the scope of his office or employment.'" *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998) (quoting 28 U.S.C. § 1346(b)). This consent does

not extend to the acts of independent contractors, for which the government is not liable. *Id.* In determining whether an individual is an employee or independent contractor, the court looks to ten factors laid out in the Restatement (Second) of Agency, § 220.[2] *Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997). Though no factor is dispositive, the key inquiry remains who has the power "to control the detailed physical performance of the individual." *Linkous*, 142 F.3d at 275.

When a federal employee is sued in tort, the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act") empowers the United States Attorney General, through the appropriate United States Attorney, to certify that the employee "was acting within the scope of his . . . employment at the time of the incident out of which the claim arose." *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 419 (1995) (quoting 28 U.S.C. § 2679(d)(1)). Because the remedies of the FTCA are exclusive, such certification results in the preclusion of any claim against the individual employee. 28 U.S.C. § 2679(b). The Attorney General's refusal to make this certification is not dispositive, however. In such a case, the putative employee "may at any time before trial

---

[2] These factors are:
    a) the extent of control which, by the agreement, the master may exercise over the details of the work;
    (b) whether or not the one employed is engaged in a distinct occupation or business;
    (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
    (d) the skill required in the particular occupation;
    (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
    (f) the length of time for which the person is employed;
    (g) the method of payment, whether by the time or by the job;
    (h) whether or not the work is part of the regular business of the employer;
    (i) whether or not the parties believe they are creating the relation of master and servant; and
    (j) whether the principal is or is not in business.
*Rodriguez*, 129 F.3d at 765.

petition the court to find and certify that the employee was acting within the scope of his office or employment." *Id.* at § 2679(d)(3).

Here defendants concede that the Attorney General has declined to certify that Harter was a federal employee acting within the course and scope of his employment. They maintain that the court should nonetheless make such a finding under 28 U.S.C. § 2679(d)(3), in reliance on the controls exercised by the government through the JRTC over the MREs. To this end defendants show that, under § C.5 of the Performance Work Statement (the contract in this matter), MREs are planned with significant oversight and control by the JRTC. Doc. 14, att. 2. Under § C.1.9–13, Valiant personnel must possess specific qualifications. JRTC controls these qualifications and retains the right to prevent the employment of any individual identified as a potential threat. The sections specifically applicable to role players, however, under C.5.11, show that it is the contractor that develops roles, and coordinates and provides transportation of role players to and from MRE site. *Id.* at 125–27. The contractor is also responsible for training role players, ensuring they are properly briefed and rehearsed, and for the provision and safety of the vehicles used in the MREs. *Id.* at 126–28.

While the government retained significant oversight, it is clear that Valiant controlled the detailed physical performance of the individual in the role Harter was filling at the time of the accident. Valiant defined the roles, provided the training and transportation, and took responsibility for briefing the role players. Defendants have not shown that any of the other factors described under § 220, to the extent they are even

9

relevant, outweigh this control. Accordingly, there is no basis for certifying Harter as a federal employee under 28 U.S.C. § 2679(d) or dismissing the claims against him.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 14] will be denied.

**THUS DONE AND SIGNED** in Chambers on this 3rd day of May, 2021.

_____
**JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE**